**SCHLEIER LAW OFFICES, PC**
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ.  #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ.  #011696
Email: brad@schleierlaw.com

Attorneys for Plaintiff Linda Jordan

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda Jordan, a married person, | ) CV |
| | ) |
| Plaintiff, | ) **COMPLAINT** |
| v. | ) |
| | ) **(JURY TRIAL DEMANDED)** |
| Horizon Moving Systems, Inc., an Arizona corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, by and through counsel, for her Complaint alleges as follows:

**JURISDICTION AND PARTIES**

1.  Jurisdiction is conferred upon this Court and this action arises under the Fair Labor Standards Act of 1938, 29 U.S.C. §201 *et seq*., as amended by the Equal Pay Act, 20 U.S.C. §206(d) ("EPA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et seq.* ("Title VII").

2.  Plaintiff Linda Jordan [hereinafter "Plaintiff"] filed a charge of sex discrimination and retaliation against Defendant Horizon Moving Systems, Inc. [hereinafter

-1-

"Defendant"] with the Equal Employment Opportunity Commission [hereinafter "EEOC"] on or about December 8, 2010.

3. On or about February 28, 2011, the EEOC issued its Notice of Right to Sue.

4. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII. Jurisdiction and venue of this Court are proper as the parties' Employment Agreement states that any litigation shall be submitted to a court of competent jurisdiction in the County of Maricopa, State of Arizona.

5. Plaintiff is a married woman who resides in Yuma County, Arizona.

6. Defendant Horizon Moving Systems, Inc. is an Arizona corporation doing business in the State of Arizona and is subject to the EPA. Defendant operates a moving and storage business in five locations in the State of Arizona: Tucson, Phoenix, Yuma, Flagstaff and Sierra Vista. Bruce L. Dusenberry [hereinafter "Dusenberry"] is Defendant's President and until October 1, 2010, was Plaintiff's supervisor. On October 1, 2010, Vinay Kulkarni [hereinafter "Kulkarni"] became Defendant's Chief Operating Officer.

**FACTUAL BACKGROUND**

7. Plaintiff was first employed by Defendant from 1986 until 1992 as the office manager. Plaintiff left employment and attended Northern Arizona University until December 1996. Plaintiff began her second period of employment on February 7, 1998 when she was hired as the General Manager of Defendant's Flagstaff office.

8. Plaintiff managed the Flagstaff office until early 2007 and in December 2006, Plaintiff transferred to the Yuma office where she served as General Manager. In September 2009, as a result of a vacant General Manager position at the Tucson office, Plaintiff and Rick Shelly, the General Manager of the Sierra Vista office, were assigned

to share the Tucson General Manager position. In October 2009, Plaintiff also became the Long Haul Director for Defendant.

9. In March 2010, Plaintiff wrote a letter to Dusenberry asking him to find a General Manager for the Tucson office immediately because she was "stretched too thin" and Defendant's peak season was approaching. Defendant did not hire a General Manager for the Tucson office, but instead, Plaintiff became the sole General Manager for the Tucson office.

10. As a direct result of Plaintiff's increased workload (General Manager of Yuma, General Manager of Tucson and Long Haul Director), on July 12, 2010 Plaintiff sent Dusenberry an email in which she resigned from the Tucson and Yuma General Manager positions effective September 1, 2010 due to her health and well-being. Plaintiff requested to be assigned a sales position in the Yuma office.

11. Plaintiff met with Dusenberry in Tucson on or about July 21, 2010. During that meeting, Plaintiff raised pay equity issues with Dusenberry and stated there was pay disparity between the Tucson and Phoenix offices. Dusenberry agreed that there should be pay parity. Plaintiff expected Dusenberry to make the necessary adjustment.

12. Plaintiff again met with Dusenberry in Yuma on July 28, 2010. They discussed Plaintiff's leadership role in Horizon and Dusenberry asked Plaintiff to remain in her current positions.

13. On October 1, 2010, Kulkarni assumed the position of Defendant's Chief Operating Officer after having been a company consultant and Chief Marketing Officer since February 18, 2010.

14. On October 5, 2010, Plaintiff and Dusenberry had an unscheduled meeting in his office. During that meeting, Plaintiff expressed her concerns about Kulkarni's

communication skills and Dusenberry told her he has encouraged Kulkarni to take communication coaching and he specifically recommended it be from a female as that is an area Kulkarni has trouble with culturally. Dusenberry assured Plaintiff that she did not have anything to worry about as far as her job was concerned. Plaintiff told him that she was concerned about the entire company and all the people in it.

15. After assuming the position of Chief Operating Officer, Kulkarni wrote an email to Plaintiff on October 16, 2010 as follows:

> Linda: I wanted to let you know that our team is stronger with you on it and I truly appreciate your dedication and contributions. I am looking forward to seeing you next week.

16. On October 18, 2010, Kulkarni again wrote to Plaintiff as follows:

> "I just want to let you know how much I appreciate you and your contribution to the Horizon enterprise wide. We are approaching the new year and I intend to usher in a new way of doing things at Horizon and a break-away from the old ways of doing things. I see you playing an important role in the new order and structure…I promise to treat you with respect and dignity and hope to create an environment for you and others on our team, wherein you can display your best talents on a regular basis and make meaningful contributions to Horizon's business goals, achieve your own personal goals and get recognized for your contributions as well. It will also be my endeavor to treat you and everyone else with fairness.

17. On October 20, 2010, Plaintiff met with Kulkarni to discuss the structure of the company and Plaintiff's role in that structure. During that meeting, Plaintiff again raised the issue of pay equity and mentioned that Guy Reynolds, the former General Manager of the Phoenix office, was making more money than Plaintiff.

18. Plaintiff is informed and believes and therefore alleges that Guy Reynolds was earning $110,860 while Plaintiff was earning $79,000. The Job Descriptions for the Phoenix and Tucson General Manager positions are identical.

-4-

19. On November 2, 2010, Kulkarni told Plaintiff that there was now "pay parity" between the branches.

20. On November 10, 2010, Plaintiff met with Kulkarni.  At that time, Kulkarni terminated Plaintiff's employment, stating there was "tension" in their relationship.

## COUNT ONE
### (Violation of the Equal Pay Act – Unequal Pay)

21. Plaintiff incorporates the allegations of Paragraphs 1-20 as if fully set forth herein.

22. By paying Plaintiff, as the General Manager of the Tucson office, General Manager of the Yuma office and Long Haul Director less than the General Manager of the Phoenix office, Defendant violated Section 6(d) of the EPA by discriminating between employees on the basis of sex by paying wages to the Plaintiff at a rates less than the rate at which it pays wages to male employees who work under similar working conditions within the same establishment and who perform substantially equal jobs, and who have job duties requiring substantially equal skill, effort and responsibility as Plaintiff.

23. Defendant's violation of the Act was willful and Plaintiff is therefore entitled to damages in the amount of the difference between the wages actually received by Plaintiff and the wages paid to male employees for equal work within the meaning of the Equal Pay Act, together with an additional equal amount as liquidated damages as authorized by Section 16(b) and Section 6(d)(3) of the Act.

## COUNT TWO
### (Violation of Title VII – Sex Discrimination)

24. Plaintiff incorporates the allegations of Paragraphs 1-23 as if fully set forth herein.

25. Defendant unlawfully discriminated against Plaintiff on account of her sex in the terms, privileges and conditions of her employment by paying wages to the Plaintiff at a rate less than the rate at which it pays wages to male employees who work under similar working conditions within the same establishment and who perform substantially equal jobs, and who have job duties requiring substantially equal skill, effort and responsibility as Plaintiff, all in violation of Title VII.

26. Defendant acted maliciously, intentionally, and/or in reckless disregard of Plaintiff's rights and in violation of her right to be free from sex discrimination and Plaintiff is therefore entitled to recover punitive and exemplary damages against Defendant.

27. As a direct and proximate result, Plaintiff has suffered damages in an amount to be proven at trial, including lost wages.

28. As a direct and proximate result, Plaintiff has suffered mental and emotional distress, pain and suffering and is entitled to recover compensatory damages in an amount to be proven at trial.

## COUNT THREE
### (Violation of the Equal Pay Act - Retaliation)

29. Plaintiff incorporates the allegations of Paragraphs 1-28 as if fully set forth herein.

30. Under the Fair Labor Standards Act, which encompasses the Equal Pay Act, it is unlawful to "discharge or in any manner discriminate against any employee because such employee has filed any complaint ... under this Act." 29 U.S.C. § 215(a)(3).

31. On July 21, 2010 and October 20, 2010, Plaintiff engaged in protected activity by informally complaining to Defendant's management about disparity in pay

between her General Manager positions and similarly-situated male employees who were General Managers.

32. Prior to October 20, 2010, Plaintiff was reassured by Dusenberry and Kulkarni that she had nothing to worry about as far as her employment was concerned.

33. On November 10, 2010, just 21 days later, Plaintiff's employment with Defendant was terminated.

34. As a direct and proximate result, Plaintiff has suffered damages in an amount to be proven at trial, including lost wages.

35. Defendant's violation of the Act was willful and Plaintiff is therefore entitled to damages, together with an additional equal amount as liquidated damages as authorized by Section 16(b) and Section 6(d)(3) of the Act.

### COUNT FOUR
### (Violation of Title VII - Retaliation)

36. Plaintiff incorporates the allegations of Paragraphs 1-35 as if fully set forth herein.

37. Title VII prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII, 42 U.S.C. § 2000e-3(a).

38. On July 21, 2010 and October 20, 2010, Plaintiff engaged in protected activity by informally complaining to Defendant's management about disparity in pay between her General Manager positions and similarly-situated male employees who were General Managers.

39. Prior to October 20, 2010, Plaintiff was reassured by Dusenberry and Kulkarni that she had nothing to worry about as far as her employment was concerned.

40. On November 10, 2010, just 21 days later, Plaintiff's employment with Defendant was terminated.

41. Defendant's termination of Plaintiff's employment violates the anti-retaliation provisions of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*

42. As a direct and proximate result, Plaintiff has suffered damages in an amount to be proven at trial, including lost wages.

43. As a direct and proximate result, Plaintiff has suffered mental and emotional distress, pain and suffering and is entitled to recover compensatory damages in an amount to be proven at trial.

44. Defendant acted maliciously, intentionally, and/or in reckless disregard of Plaintiff's rights and in violation of her right to be free from retaliation and Plaintiff is therefore entitled to recover punitive and exemplary damages against Defendant.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

1. Awarding Plaintiff an amount equal to the difference between the wages actually received and the wages paid to male employees performing equal work;

2. Awarding Plaintiff compensatory damages in an amount to be proven at trial;

3. Awarding Plaintiff prejudgment and post-judgment interest;

4. Awarding punitive damages against Defendant in an amount to be proven at trial;

5. Awarding Plaintiff liquidated damages;

6. Awarding Plaintiff all attorneys' fees and costs incurred in this action; and

7. Awarding Plaintiff such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 2nd day of March 2011.

                                            SCHLEIER LAW OFFICES, P.C.

                                            s/ Tod F. Schleier
                                            Tod F. Schleier
                                            Attorneys for Plaintiff